## Case No. 10,585.

### The ORONO.

UNITED STATES v. The FRANKLIN.

UNITED STATES v. The AMPHITRITE.

[1 Gall. 137.] [1]

Circuit Court. D. Massachusetts. May Term, 1812.

NON-INTERCOURSE ACT — REVIVAL BY PROCLAMATION — REPEAL OF EMBARGO ACTS.

1. The president's proclamation of the 9th of August, 1809, was without legal operation, and did not revive the non-intercourse act of March 1, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528, c. 24].
[Followed in The Wasp, Case No. 17,249.]

2. By the nineteenth section of Act March 1, 1809, c. 91, and the second section of Act June 28, 1809, c. 9 [2 Stat. 550], the embargo acts were as to future cases repealed.

[Appeal from the district court of the United States for the district of Massachusetts.]

In admiralty.

G. Blake, for the United States.

Wm. Prescott, for claimant.

STORY, Circuit Justice. The facts of the case appear to be these: The schooner sailed from Saco, in the district of Maine, on the 2d of January, 1810, during the existence of the act of March 1, 1809, c. 91 [c. 24], and an act of June 28, 1809, c. 9. The vessel was cleared out for Cayenne in the West Indies, and bond was given pursuant to the third section of the latter act. By stress of weather, she was compelled to put into Demerara, where her cargo was sold on credit, and from various impediments, the principal part was not taken on board until after the 1st day of May, 1810, on which day the act of 1st of March, 1809, expired. See Act June 28, 1809, c. 9, § 1. It appears, that four or five hogsheads of rum and molasses had been taken on board previous to that time. The information alleges (1) that the schooner departed from the port of Saco, and proceeded to the port of Demerara, contrary to the third section of the act of January 9, 1808, c. 8; (2) that after the 28th of May, 1809, to wit, on the 25th April, 1810, the goods aforesaid were taken on board at said Demerara, contrary to the fifth section of the act of March 1, 1809, c. 91.

As to the first count, it is clearly without foundation; for by the operation of the nineteenth section of the act of March 1, 1809,

[1] [Reported by John Gallison, Esq.]

and the second section of the act of June 28, 1809, the embargo laws were, after the 28th of June, 1809, as to all future cases, repealed. As to the second count, its validity, in point of law, depends upon the legal effect of the proclamation of the president of the United States, of 9th August, 1809. By the 11th sect. of the act of 1st March, 1809, the president was authorized, in case of a revocation of the decrees or orders of Great Britain and France, which violated our neutral commerce, to declare the same by proclamation; after which proclamation, the trade of the United States might be renewed with the nation revoking its decrees, notwithstanding the provisions of that act. It has been contended by the attorney for the United States, that this proclamation being founded on a mistake of fact, had no legal effect, and was merely void. Whether it was so founded in mistake, is not for the court to determine. It does not belong to the court to superintend the acts of the executive, nor to decide on circumstances left to his sole discretion. So far as applies to courts of justice, the president's proclamation, being founded on the law, is to be considered as duly and properly issued, and of course as completely suspending the act of 1st March, 1809, as to Great Britain and her dependencies. If further proof of the correctness of this opinion were necessary, it would be found in the express recognition of this proclamation in Act June 28, 1809.

The next question is, whether the proclamation of the president of the United States, of 9th August, 1809, revived the act of March 1, 1809, against Great Britain and her dependencies? for if it did not, then clearly the Orono has been guilty of no offence. I take it to be an incontestable principle, that the president has no common law prerogative to interdict commercial intercourse with any nation; or revive any act, whose operation has expired. His authority for this purpose must be derived from some positive law; and when that is once found to exist, the court have nothing to do with the manner and circumstances under which it is exercised. The only law produced for this purpose is the eleventh section of the act of March 1, 1809, and first and third sections of Act June 28, 1809, which refer to the former provision. Now, the eleventh section contains no authority whatsoever to enable the president to revive that act, when once it had been suspended, as to either nation. The authority given is exclusively confined to the revocation of the act. For the executive department of the government, this court entertain the most entire respect; and amidst the multiplicity of cares in that department, it may, without any violation of decorum, be presumed, that sometimes there may be an inaccurate construction of a law. It is our duty to expound the laws as we find them in the records of state; and we cannot, when called upon by the citizens

of the country, refuse our opinion, however it may differ from that of very great authorities. I do not perceive any reasonable ground to imply an authority in the president to revive this act, and I must therefore, with whatever reluctance, pronounce it to have been, as to this purpose, invalid.

I affirm the decree of the district court, and certify reasonable cause of seizure. As the case of U. S. v. The Franklin [Case No. 15,160] stands on the same principles, I also affirm that decree, and certify as above. So also the case of U. S. v. The Amphitrite [Id. 14,444].

---

OROZIMBO, The (MITCHELL v.). See Case No. 9,667.

ORPHAN BOY, The (MERCANTILE INS. CO. v.). See Case No. 9,431.

ORPHEUS, The (LEWIS v.). See Case No. 8,330.

ORPHEUS, The (YOUNG v.). See Case No. 18,169.